**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PATRICIA ANNETTE BARKER, ) | CASE NO. 5:13-CV-01712 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | |

Plaintiff, Patricia Annette Barker ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

On May 3, 2010, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of March 30, 2009.  (Transcript ("Tr.") 10.)  The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id*.)  On March 14, 2012, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and

testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On April 6, 2012, the ALJ found Plaintiff not disabled. (Tr. 7.) On June 26, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On August 7, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 17, 19.)

Plaintiff asserts the following assignment of error: The ALJ erred in concluding that Plaintiff is capable of performing past relevant work as an accounting clerk and general office clerk.

## II.     EVIDENCE

### A.     Personal and Vocational Evidence

Plaintiff was born in November 1961 and was 47-years-old on the alleged disability onset date. (Tr. 98.) Plaintiff completed high school and held a two-year degree in accounting. (Tr. 49-50, 133.) She had past relevant work as an accounting clerk, convenience store clerk, and general office clerk. (Tr. 18.)

### B.     Medical Evidence

#### 1.     Medical Reports

In June 2008, Nagaprasad Nagajothi, M.D., diagnosed Plaintiff with early stage myeloproliferative disease. (Tr. 220.) Dr. Nagajothi noted that Plaintiff was a heavy smoker and encouraged her to cut down on her smoking. (Tr. 219.)

In January 2009, Plaintiff presented to the emergency room with complaints of

2

numbness in her left arm and pain in the left side of her neck.  (Tr. 276.)  Upon examination, Plaintiff had good muscle strength in her left arm but showed increased pain with movement of the left scapula.  (*Id.*)  Treatment notes indicate that an x-ray of Plaintiff's left shoulder had been taken earlier that month, and that the x-ray was normal and did not reveal any problems with Plaintiff's left shoulder.  (*Id.*)

Plaintiff treated with Nashat Gabrail, M.D., of the Gabrail Cancer Center from 2008 through 2011.  (Tr. 191-223, 322-328, 329-331.)  In November 2008, Dr. Gabrail indicated that Plaintiff had mild baseline fatigue, and had normal results upon physical examination.  (Tr. 217.)  He recommended that Plaintiff continue using Advil, receiving Decadron pulse therapy, and get screened for lupus.  (*Id.*)

In December 2008, Plaintiff saw Dr. Gabrail with reports of mild fatigue over baseline and intermittent aches and pains in the small joints.  (Tr. 215.)  Dr. Gabrail assessed Plaintiff with fatigue that did not respond to recent steroid treatments, despite past success with steroid trials.  (Tr. 216.)  Dr. Gabrail's physical examination showed that Plaintiff had no acute distress; no leg edema; intact sensation; and normal recent and long-term memory.  (Tr. 215.)  Dr. Gabrail's impression included early stage myeloproliferative disease; subclinical or mildly clinical lupus that failed to respond to steroids; aches and pain with bone scan showing some arthritic changes; possible splenomegaly; and extreme fatigue.  (Tr. 216.)  Dr. Gabrail ordered a sonogram of Plaintiff's spleen, which revealed normal results.  (Tr. 216, 221.)  Later that month, Dr. Gabrail noted Plaintiff's normal physical examination results and recommended pulse therapy steroids.  (Tr. 213-214.)

In June 2009, Dr. Gabrail noted that Plaintiff's early stage myeloproliferative

disease, or subclinical lupus, failed to respond to steroids, despite Plaintiff gaining three to four months of clinical benefits from the steroid pulse therapy in the past.  (Tr. 211.)  Plaintiff complained of aches and pains.  (*Id.*)

In October 2009, Plaintiff reported to Dr. Gabrail that she had increased fatigue and that she slept for 14 hours per day.  (Tr. 209.)  Dr. Gabrail noted that Plaintiff's fatigue was related to several of her medications.  (*Id.*)

In October 2010, Plaintiff saw Dr. Gabrail with complaints of fatigue and reported that her steroid treatment for aches and pains only gave her relief for about one week.  (Tr. 327.)  Physical examination results were normal.  (*Id.*)  Dr. Gabrail noted that Plaintiff continued to smoke one and a half packs of cigarettes per day.  (*Id.*) In July 2011, Dr. Gabrail indicated that Plaintiff's physical symptoms could all be smoking-related, and he urged her to quit smoking.  (Tr. 329-330.)

Plaintiff treated at Arrowhead Clinic ("Arrowhead") from January 2008 through February 2012.  (Tr. 224-277, 299-318, 348-369.)  Plaintiff's primary care physician at Arrowhead was Denise Miller, M.D.  Generally, physical examinations performed at Plaintiff's visits to Arrowhead showed grossly normal results, with limited exceptions showing that Plaintiff had musculoskeletal issues upon examination.  (Tr. 244-245, 251.)  Arrowhead records from November 2009 show that Plaintiff complained of fatigue, and it was recommended that she go to the Hope Clinic and try Savella for her fibromyalgia.  (Tr. 235.)  In January 2010, Plaintiff reported that her fibromyalgia was "acting up again."  (Tr. 231.)  In April 2010, Plaintiff received another Kenalog steroid injection.  (Tr.  228.)  Treatment notes indicate that around that time Plaintiff had entered her daughter in drug rehabilitation and assumed care of her daughter's 18-

month-old son.  (Tr. 231, 306.)

In September 2010, x-rays of Plaintiff's cervical spine showed moderate degenerative changes and evidence of prior fusion at C6-C7.  (Tr. 315.)  Concerning Plaintiff's diabetes, Arrowhead notes showed that her sugar levels looked "great" in February 2011. (Tr. 311.)  In July 2011, Plaintiff complained of feeling "super fatigued some days," and Lyrica, Plaintiff's fibromyalgia medication, was increased.  (Tr. 359.) Treatment notes from August 2011 note that Plaintiff's fibromyalgia improved with her increased dosage of Lyrica.  (Tr. 358.)

In October 2011, rheumatology specialist Kevin Hackshaw, M.D., reported that Plaintiff had symptoms suggestive of fibromyalgia.  (Tr. 343.)  Dr. Hackshaw diagnosed diabetes mellitus, fibromyalgia, and myeloproliferative disorder.  (*Id.*)  He recommended testing and increasing Plaintiff's dosage of Lyrica, as he found that Plaintiff was responding to the medication appropriately.  (*Id.*)  On examination, Dr. Hackshaw found that Plaintiff did not have stigmata of connective tissue disease; showed no tenderness to palpitation of any joints; had full range of motion of all joints; showed no effusion; had 18 out of 18 positive fibromyalgia tender points; and her neurological status was grossly intact.  (Tr. 343-344.)  In November 2011, Plaintiff reported that her sleep had improved with Melatonin.  (Tr. 336.)  Dr. Hackshaw recommended that Plaintiff undergo physical therapy for her fibromyalgia and advised her to slowly discontinue her use of narcotics, which may worsen fibromyalgia pain.  (Tr. 338.)

In January 2012, Plaintiff complained of neck pain and left hand numbness.  (Tr. 350.) In February 2012, Plaintiff's left arm ulnar tunnel syndrome was confirmed by electromyographic examination.  (Tr. 348-349.)  Plaintiff reported to Dr. Miller that she

5

was very tired some days.  (Tr. 348.)  Dr. Miller recommended that Plaintiff continue taking Lyrica and seek physical therapy.  (*Id.*)

### 2. Agency Reports

On September 21, 2010, state agency medical expert Judith Brown, M.D., performed a consultative examination at the request of the Commissioner.  (Tr. 279-287.)  Dr. Brown assessed type II diabetes mellitus; lupus; fibromyalgia; and myeloproliferative disease.  (Tr. 282.)  Dr. Brown observed that Plaintiff appeared comfortable in the supine and sitting positions and ambulated with a normal gait. (Tr. 281.)  She was able to follow simple commands and instructions without difficulty.  (*Id.*)  She had normal straight leg raise testing; could stand on each leg alone without trouble; could walk on her heels and toes and perform heel-to-toe walks; could squat without difficulty; exhibited tenderness in the left elbow, shoulders, hands, hip joints, and medial and lateral joints of her knees; and had no edema, neurological deficits, or muscle weakness.  (Tr. 281-283.)  Dr. Brown concluded that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects appears to be at least mildly impaired. . . ."  (Tr. 283.)

In November 2010, non-examining state agency consultant W. Bolz, M.D., reviewed Plaintiff's file and concluded that Plaintiff was capable of performing a significant range of light work activities and was able to stand and walk for up to six hours in an eight-hour work day. (Tr. 290-298.)  In March 2011, Dimitri Teague, M.D., reviewed Plaintiff's records and concurred with Dr. Bolz's opinion.

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

Plaintiff had a two-year degree in accounting.  (Tr. 49.)  She previously worked as an office manager, an accounting clerk, and a payroll clerk (Tr. 48-50.)  Plaintiff lived with her husband, one dog, and two cats.  (Tr. 47.)  Plaintiff and her husband shared responsibility for their pets.  (*Id.*)  On a typical day, Plaintiff would get up around 7:00 a.m., make coffee and watch the news, and perform basic housekeeping duties, which she shared with her husband.  (Tr. 50.)  Plaintiff was able to go grocery shopping but could not load all items into her cart.  (Tr. 51.)  She did not do any volunteer work or participate in any social groups or activities.  (Tr. 51-52.)  She enjoyed reading and watching squirrels play in her yard, and she spent a couple hours per day on her computer emailing her family.  (Tr. 52.)  On some days, Plaintiff could run basic errands, such as banking and going to the post office.  (*Id.*)

Plaintiff testified that she smoked about one pack of cigarettes per day.  (Tr. 52.)  She stated that she was able to survive financially by "giving up a lot of things," living on only the "very basics," receiving food stamps, and going to a food bank.  (Tr. 53.)  Plaintiff testified that she could not work due to intense pain, muscle weakness, and exhaustion.  (*Id.*)  She had numbness in her hand, fingers, and arm.  (Tr. 55.)  She also stated that due to her pain, exhaustion, and medications, she could no longer concentrate or think clearly.  (Tr. 53.)  She could not sleep very well.  (*Id.*)  "There's nights that it's so bad, the only relief I get, honestly, is to sleep in a bathtub in hot water."  (*Id.*)  Plaintiff testified that she could walk for a total of about one hour in a

period of eight hours, and stand for less than one hour in an eight-hour period. (Tr. 54.) Plaintiff could not drive at night due to night blindness. (Tr. 58.)

### 2. Vocational Expert's Hearing Testimony

Barbara Burke, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's same age, educational background, and vocational experience, who could: perform light work; occasionally climb ladders, ropes, or scaffolds; and frequently stoop, kneel, crouch, and crawl. (Tr. 63.) The individual must avoid: concentrated exposure to extreme cold; workplace hazards such as hazardous machinery and unprotected heights; night shift work; and rapid production rate or pace work. (Tr. 64.) The VE testified that the hypothetical individual would be capable of performing all of Plaintiff's past work. (*Id.*)

The ALJ asked the VE to assume a second hypothetical individual with the same limitations as the first hypothetical except that the individual could only occasionally lift overhead with her left upper extremity. (*Id.*) The VE testified that the individual could perform Plaintiff's past work. (*Id.*)

The ALJ presented a third hypothetical question to the VE, which was identical to hypothetical number two except that the individual would be limited to sedentary work. (Tr. 64.) The VE testified that the individual could perform Plaintiff's past work as a payroll clerk, as that is a sedentary occupation. (Tr. 65.) The VE also testified that the individual could perform Plaintiff's past work if the individual could only occasionally kneel, crouch, and crawl. (Tr. 68.)

The ALJ asked the VE to assume a fourth hypothetical individual with the same

8

limitations as hypothetical three except that the individual would also be limited to simple, routine tasks involving only simple work-related decisions. (*Id.*) The VE testified that the hypothetical individual could not perform Plaintiff's past work, but could perform such jobs as a cafeteria cashier, a telephone solicitor, and a small products assembler. (Tr. 65-66.)

The ALJ asked the VE to assume a fifth hypothetical individual with the same limitations as the fourth hypothetical except that the individual could only occasionally kneel, crouch, and crawl. (Tr. 66.) The VE testified that the individual would be capable of performing the jobs she previously identified. (Tr. 67.)

The ALJ asked the VE to consider a sixth hypothetical individual who could stand and walk for a total of two hours per day and sit for a total of three hours per day, and would have to be lying down the rest of the day. (Tr. 67.) The VE testified that there would be no jobs that the hypothetical individual could perform. (*Id.*)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled

by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant has not engaged in substantial gainful activity since March 30, 2009, the alleged onset date.

3. The claimant has the following severe impairments: Fibromyalgia; cervical degenerative disc disease, status post cervical fusion; left-sided ulnar tunnel syndrome; and impaired night vision.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a); however, the claimant is limited to frequent stooping, and she is limited to occasional kneeling, crouching, crawling, and climbing of ropes, ladders, and scaffolds. She is limited to no more than occasional overhead reaching with her left upper extremity, and the claimant must avoid concentrated exposure to extreme cold as well as workplace hazards such as dangerous machinery and unprotected heights.  The claimant cannot work a night shift, and she cannot perform work that requires a rapid production/quota/piecework rate.

6. The claimant is capable of performing past relevant work as an Accounting Clerk and as a General Office Clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 30, 2009, through the date of this decision.

(Tr. 12-18.)

## V.  LAW & ANALYSIS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in

the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignment of Error

#### 1.  The ALJ Erred in Concluding that Plaintiff is Capable of Performing Past Relevant Work as an Accounting Clerk and General Office Clerk.

Plaintiff argues that the ALJ erred in finding that she is capable of performing her past relevant work as an accounting clerk and general office clerk.[1] For the following

---

[1] Plaintiff also argues that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Miller. According to Plaintiff, Dr. Miller "specifically indicated that Plaintiff is disabled." (Plaintiff's Brief ("Pl.'s Br.") 12.) Plaintiff's argument fails for two reasons: First, the transcript citation Plaintiff provides to support her contention does not reference treatment notes or reports from Dr. Miller. Second, even if Dr. Miller did in fact state at one point or another that Plaintiff was disabled, the ALJ would not have been required to give any deference to

reasons, Plaintiff's argument is without merit.

Residual functional capacity (RFC) is an indication of a claimant's work-related abilities despite her limitations.  *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.  When determining a claimant's RFC, the ALJ is required "to consider the combined effect of all of the claimant's impairments. . . ."  *Walker v. Sec'y of Health & Human Servs.,* 980 F.2d 1066, 1071 (6th Cir. 1992).  At the fourth step of the sequential analysis, the Commissioner determines whether the claimant has the RFC to perform the requirements of her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant has the RFC to perform her past relevant work, the claimant is not disabled.  *Id.*

The ALJ concluded that Plaintiff had the following RFC:

---

> that opinion.  It is well established that certain issues are reserved to the Commissioner for determination.  *See* 20 C.F.R. § 416.927(d).  Among these are whether a claimant is disabled.  *See* 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  To give controlling weight to a physician's statements that a claimant is disabled or unable to work "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."  SSR 96-5P (S.S.A July 2, 1996).

13

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a); however, the claimant is limited to frequent stooping, and she is limited to occasional kneeling, crouching, crawling, and climbing of ropes, ladders, and scaffolds.  She is limited to no more than occasional overhead reaching with her left upper extremity, and the claimant must avoid concentrated exposure to extreme cold as well as workplace hazards such as dangerous machinery and unprotected heights.  The claimant cannot work a night shift, and she cannot perform work that requires a rapid production/quota/piecework rate.

(Tr. 14.)  In determining that Plaintiff was capable of performing her past work as an accounting clerk and a convenience store clerk, the ALJ relied on the testimony of the VE, who concluded that a hypothetical individual of Plaintiff's age, education, and work experience with the residual functional capacity described above could perform Plaintiff's past work. (Tr. 18.)   Plaintiff has not challenged the qualifications of the VE or the adequacy of her testimony.  Rather, Plaintiff maintains that the ALJ erred in relying on the VE's testimony, because the ALJ's hypothetical question to the VE did not adequately account for Plaintiff's extreme fatigue and pain.  Thus, Plaintiff's argument is essentially a challenge to the ALJ's RFC finding.   This argument is without merit, as the following substantial evidence supports the ALJ's conclusion that Plaintiff can perform a limited range of sedentary work:

- Plaintiff remained capable of performing numerous activities of daily living, despite her alleged symptoms of extreme pain and fatigue. (Tr. 15.)  She could run errands and grocery shop, share household chores with her husband and help care for their pets, take care of her 18-month-old grandson, watch television daily, use the computer for a couple hours per day, perform self-care and grooming, and manage her household finances.  (Tr. 15-16.)

- Plaintiff failed to adhere to recommended courses of treatment, including physical therapy and cessation of smoking, despite the fact that Dr. Gabrail found that Plaintiff's physical symptoms may all be

14

>   related to her smoking.  (Tr. 17, 52, 219, 255, 327, 329-330, 338, 348.)
>
> - Treatment notes from Arrowhead generally revealed grossly normal physical examination results.  (Tr. 227-236, 238-240, 242, 247-250, 252-255, 257, 305-307, 348, 353, 365-369.)
>
> - In September 2010, state agency medical consultant Dr. Brown observed that Plaintiff could ambulate with a normal gait, display a normal posture and station, and follow simple commands and instructions without difficulty.  (Tr. 16, 281.)  Dr. Brown advised that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling as well as pushing and pulling heavy objects" was only "mildly impaired." (Tr. 17, 283.)
>
> - In November 2010, non-examining state agency medical consultant Dr. Bolz concluded that Plaintiff retained the ability to perform a significant range of light work activities, including the ability to stand and walk for up to six hours during the course of an ordinary eight-hour workday.  (Tr. 17, 291-295.)  A second non-examining state agency medical consultant, Dr. Teague, confirmed Dr. Bolz's conclusions in March 2011.  (Tr. 17, 319.)
>
> - Plaintiff reported that her sleep improved with Melatonin, and treatment notes indicate that her fibromyalgia pain improved with her increased dosage of Lyrica.  (Tr. 336, 358.)

Moreover, a review of the ALJ's detailed decision indicates that in determining Plaintiff's RFC, the ALJ adequately considered Plaintiff's own testimony, including her subjective complaints of extreme fatigue and pain.  (Tr. 14-18.)  In her decision, the ALJ specifically noted that she found Plaintiff's "asserted degrees of fatigue and dysfunction less than fully or even significantly supported by the medical and opinion evidence of record."  (Tr. 18.)  In determining that Plaintiff's symptoms were not as severe as she alleged, the ALJ explained:

> The claimant alleges no particular difficulties in her self-care, but for difficulties raising her left arm above shoulder level; she requires no reminders to take her medications or perform routine

15

> household chores; and the claimant makes simple meals on a daily basis (Exhibit 3E). The claimant continues to drive short distances in daylight, and she remains able to shop and maintain the family finances; the [claimant] is able to "read, watch television, and email everyday with no problems" (Exhibit 3E). Finally and not of insignificance, the claimant actually stopped working 2 years before her alleged disability onset date, and her work stoppage was not related to her symptoms or impairments.

(*Id.*) Thus, the ALJ did not ignore the impact of Plaintiff's pain and fatigue on her ability to maintain employment. Rather, the ALJ considered all of Plaintiff's reported symptoms to the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record, and concluded that despite her symptoms, Plaintiff could perform sedentary work with some additional limitations. (Tr. 14.)

In determining Plaintiff's RFC, the ALJ appropriately considered the combined effect of all of Plaintiff's impairments to render an RFC determination that is supported by substantial evidence in the record. The VE testified that an individual with Plaintiff's RFC would be capable of performing Plaintiff's past work as an accounting clerk and a general office clerk, and the ALJ reasonably relied on the VE's testimony in making her step four finding. For the foregoing reasons, Plaintiff's case does not require remand.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                              s/ *Nancy A. Vecchiarelli*
                              U.S. Magistrate Judge

Date: June 30, 2014